W. J. BINNEY, ET AL. v. MORRIS BROWN.

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 3, OF PHILADELPHIA COUNTY, IN EQUITY.

Argued March 24, 1887—Decided April 25, 1887

1. To an action brought for injuries resulting from an act done more than six years before, through mere mistake not involving fraud, the statute of limitations is a complete bar.

2. B., as an administrator, entered satisfaction on the margin of the record of a mortgage which his decedent had not owned, the record at the time, showing plainly a reference to the record of the assignment of a mortgage which his decedent did own. More than six years afterwards, one who relying upon a clear search had purchased the property encumbered by the mortgage thus marked satisfied and the mortgage being enforced had lost the amount thereof, filed a bill in equity against B.'s executor, legatees and devisees, to recover compensation for the injury sustained: *Held*, that as the record itself indicated precisely what mortgage B. intended to satisfy, there was no room from the satisfaction so entered to infer fraud, actual or constructive, or more than a mere mistake, and hence the plaintiff's remedy was barred by the statute of limitations.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ.; STERRETT, J., absent.

No. 171 July Term 1887, Sup. Ct.; court below, No. 75 June Term 1884, C. P. No. 3, in equity.

In the court below this case was a bill in equity filed by Morris Brown against William J. Binney, executor of the last will and testament of Horace Binney, Jr., and in his own right; John Binney; Edward V. Lansdale, guardian of Maria T. B. Lansdale; Elizabeth C. Binney; Julia H. Binney and Charles C. Binney; William G. Milliken and Mary M. K. M., his wife; and W. Moylan Lansdale.

The bill filed July 16, 1884, in substance, averred:

There being of record at Philadelphia, in Mortgage-book G. W. C., No. 15, page 543, prior to April 15, 1867, a mortgage of $2,375 from John School and Charles Faurest to Joseph Swift, upon No. 1117 Lombard street, on that day Horace Binney, Jr., wrongfully entered satisfaction on the margin of the record.

On April 16, 1872, the plaintiff bought No. 1117 Lombard street, from Elizabeth E. School, widow and devisee of John School, for $4,500, paid or secured to be paid to her, having first obtained a certificate from the recorder that on searching the indexes he found no unsatisfied mortgages of the premises given by school or Faurest.

Horace Binney, Jr., died in 1870, the defendant William J. Binney, being his executor, and he and the other defendants, the residuary legatees and devisees.

The plaintiff spent $265.30 for conveyancing, etc., and $500 for repairs to the premises, and lived there till July 12, 1881, when he first heard of the said mortgage.

Charles E. Henry, administrator of the estate of Giles S. Musson, then brought suit on the mortgage, and William J. Binney was called upon by letter to pay the mortgage with interest.

The action resulted in a judgment in favor of Henry for $4,457.12, which was afterwards affirmed by the Supreme Court. In this defence the present plaintiff incurred a liability for counsel fees and other expenses, and suffered great anxiety of mind, for which he claimed compensation. The premises were afterwards sold by the sheriff, and wholly lost to the plaintiff.

The relief prayed for was:

1. Discovery of the estate of Horace Binney, Jr., of what part distribution has been made and to whom and what still remains undistributed.

2. That it be declared that the entry of satisfaction by Horace Binney, Jr., was a fraud upon the plaintiff, a purchaser for value of the premises without notice of the fraud.

3. Compensation from the estate of Horace Binney, Jr., for the loss suffered by the plaintiff.

4. A decree in plaintiff's favor for $5,265.30, with interest from April 16, 1872, together with all counsel fees and expenses incurred in defending the suit on the mortgage, and such other compensation as he might be entitled to.

5. A decree for payment of such amounts with costs by the defendants, so as to effectually secure the payment out of the estate left by Horace Binney, Jr.

6. General relief.

The answer admitted that Horace Binney, Jr., wrote on the margin of Mortgage-book G. W. C., No. 15, page 543, the words and letters " Horace Binney, Jr., Admr. *d. b. n. c. t. a.* of Wm. J. Bell," but denied that his act in so writing was in any way wrongful on his part. It gave the whole entry of which these words and letters formed a part, stated the circumstances under which they were written, and the title of Horace Binney, Jr., to certain other mortgages from School and Faurest to Swift, including one recorded on the next page, which Mr. Binney then wished to satisfy, whereby it happened that the recorder's clerk wrote the entry of satisfaction and directed him to sign on the wrong page. It denied that any loss which the plaintiff might have suffered was due in any manner to the act of Horace Binney, Jr. It admitted that certain interests in his estate were vested in the defendants, but averred that certain interests were vested in other parties. It admitted that William J. Binney, the executor, had been called upon by letter to pay the mortgage on No. 1117 Lombard street, with interest, but denied that he or any of the defendants had ever been asked to assist at the trial of the action on that mortgage.

The answer further submitted :

1. The estate of Horace Binney, Jr., was not liable to the plaintiff, for any loss sustained by him through the erroneous certificate of search, because :

(1.) In the absence of wilful fraud by other parties, the recorder who issued the search was alone liable for it.

(2.) The statute of limitations barred the claim.

(3.) The fact that the recorder is protected by the same statute cannot substitute the plaintiff to any supposable rights of the recorder against other parties.

(4.) Either the recorder's clerk was negligent in preparing the search, or

(5.) He relied solely on the attestation of the previous recorder, who alone was responsible for the erroneous entry of satisfaction.

(6.) The fact that the statute of limitations protects the previous recorder cannot alter the matter.

(7.) Horace Binney, Jr., was not negligent in obeying the directions of the recorder's clerk.

2. The bill itself showed that the plaintiff's true remedy was against his vendor, on the ground of her concealment of the existence of the mortgage.

3. The falsity of the certificate of search escaped detection on account of a combination of extraordinary circumstances, for which the defendants were not liable.

4. The compensation claimed was excessive.

On hearing before *Mr. M. Hampton Todd*, to whom as Examiner and Master the case when at issue was referred, the following facts were shown:

On March 30, 1850, John School and Charles Faurest, partners, mortgaged to Joseph Swift four lots on Lombard street, on which the houses numbered 1111, 1113, 1115, and 1117 were afterwards built. The mortgages were all for the same amount ($2,375 each), recorded on the same day, in the same mortgage-book (G. W. C. No. 15), on pages 546, 541, 544, and 543, respectively.

On January 31, 1853, Swift assigned the mortgages on premises No. 1111, 1113 and 1115 to Horace Binney (the elder) and Margaret Bell, executors of William J. Bell. The assignment was recorded in Mortgage-book T. H. No. 20, page 355.

On June 17, 1858, these three mortgages were assigned by Horace Binney (the elder), surviving executor, to Horace Binney, Jr. (the defendants' testator), administrator *d. b. n. c. t. a.* of the Bell estate. This assignment was recorded in Mortgage-book A. D. B. No 12, page 471.

The mortgage on No. 1117 had previously been assigned to Giles S. Musson, of Antigua, the interest being collected here (though with some irregularity) by his agent, the late J. J. Barclay, Esq. Musson died in 1855, having bequeathed the sum secured by this mortgage to his wife for life, with remainder to his daughter.

In 1856 School and Faurest dissolved partnership, Faurest conveying his share in the four mortgaged properties to School, who subsequently sold Nos. 1113 and 1115 to other parties, subject to the mortgages.

On April 15, 1867, the mortgage on No. 1115 (recorded on page 544) was paid to Mr. Binney, the assignee, and he went

to the recorder's office to have satisfaction entered. The chief clerk, Mathias Myers, indorsed the satisfaction properly on the mortgage itself, but the following entry was made upon the margin of page 543 (instead of 554) and opposite the record of the mortgage upon No. 1117:

           "April 15, 1867,    This mortgage is fully satisfied,

| " Asst. T. H. 20–355 | Before | *Horace Binney, Jr., Admr. d. b.* |
| " A. D. B. 12–471 | J. T. Owen, | *n. c. t. a. of Wm. J. Bell.* |
| | Recorder." | |

Mr. Binney wrote only the words printed in Italics. The rest, except Recorder Owen's signature, was written by Myers.

School paid no interest on the mortgage on No. 1117 from the dissolution of partnership in 1856 till July 30, 1868, when he paid Mr. Barclay all the interest ($1,638.75) due up to March 30 of that year. On December 17, 1868, he paid him the interest due September 30. About that time Mr. Barclay first heard of Musson's death in 1855. His agency being thereby revoked, he collected no more interest, and it remained undemanded for nearly thirteen years.

On January 5, 1869, School made his will, devising *inter alia* Nos. 1111 and 1117 to his wife, with this proviso, "she taking the same subject to any incumbrances existing thereon, whatever the same may be, and paying said incumbrances, which are in no event to be charged upon or paid out of the remainder of my property."

His will also contained this clause : " I order and direct that in every case in which I have devised real estate, the parties taking the same shall see to and pay the incumbrances thereon, which are in no event to be paid out of or a charge upon the rest of my estate."

He also bequeathed to her one half of his business and of his interest therein, and of the stock and fixtures thereto belonging.

Six days later he died. His executors were his widow and eldest son, and they filed an inventory, showing nearly $14,000 of personalty, but never filed any account. On September 21, 1870, Mrs. School gave her cousin, one James A. McCaffrey, a power of attorney to manage all her property in Phila-

delphia, and sell it when advisable. She soon after went to San Francisco, where she still resides. In 1871, McCaffrey sold No. 1111, subject to the mortgage.

In 1872 McCaffrey advertised No. 1117 for sale, in the *Ledger*, therein representing it as "clear" and "a bargain." Morris Brown, the plaintiff below, saw this advertisement, and being personally assured by McCaffrey that the property was ' clear," agreed to buy it for $4,500, $2,000 being cash, with a bond and mortgage to Mrs. School for $2,500. Passmore Williamson, the conveyancer, did not see the entry of satisfaction himself, but obtained from the recorder a certificate that on searching the indexes of mortgages, he found no unsatisfied mortgages of record against the premises. The deed, executed April 16, 1872, was from Mrs. School as devisee of the premises, and contained a covenant of warranty against all parties claiming either by, from or under her, or by, from or under John School, deceased.

Mrs. School afterwards assigned the plaintiff's bond and mortgage to A. B. Carver, Esq., to whom the plaintiff has since paid $1,000 on account, leaving $1,500 still due.

Musson's widow died in 1881, and her husband's will was soon after proved, Charles E. Henry being appointed administrator *d. b. n. c. t. a.* He demanded the interest then due on the School and Faurest mortgage on No. 1117, and the plaintiff then first learned that the certificate of search was misleading, and the entry of satisfaction on page 543 an error. He intervened as defendant in Henry's suit on the mortgage, and counsel on both sides joined in a letter to William J. Binney (the present appellant), executor of Horace Binney, Jr. (who had died in 1870), suggesting that he, as executor, should pay Musson's administrator the amount sued for. William J. Binney referred them to his brother, Charles C. Binney.

Musson's administrator obtained a judgment for $4,457.12 in 1883, and on April 21, 1884, this court affirmed the judgment. (Brown v. Henry, 106 Penn. St. 262.)

Under this judgment the premises, No. 1117 Lombard street, were taken in execution and sold by the sheriff for $3,500 on June 2, 1884, and Morris Brown then filed this bill.

Upon finding these facts the Master further found that there was no fraud, actual or constructive, on the part of Horace.

Binney, Jr., in the satisfaction of the mortgage, but that by mistake, and mistake alone, he wrote his name on the wrong page. He therefore recommended that the bill be dismissed.

Exceptions were filed to the Master's report, and the cause was argued before LUDLOW, P. J., and FINLETTER, A. J., and re-argued before the full bench. The death of YERKES, A. J., before any decision, occasioned a second re-argument. On March 13, 1883, LUDLOW, P. J., dissenting, the court sustained the plaintiff's exceptions and referred the case back to the Master to state an account, GORDON, A. J., delivering an opinion, which, after quoting the facts, proceeds :—

Upon these undisputed facts of this case the Master reports a decree dismissing the plaintiff's bill upon the ground that the act of Mr. Binney in entering satisfaction of the mortgage was merely a mistake and not a fraud. Though the Master does not so state, it is to be presumed that he founds his conclusion dismissing the bill upon the application of the statute of limitations, holding that since the plaintiff's action was not begun until July 16, 1884, it was barred by the statute. He does not refer to the statute of limitations either in his reasoning or his finding. Neither does he report when he finds that the plaintiff's right of action accrued. It may be presumed, however, that he adopted the view of defendants' counsel upon this subject, which was that the right accrued when the plaintiff parted with his money in purchasing the property. There is nothing in the Master's report itself, however, to indicate what his conclusions were upon this subject. He does not indeed state that branch of the contention at all, or in the most remote manner present the question as to whether the plaintiff's right of action accrued when he purchased the property, or when demand was made upon him for the payment of the mortgage, or when suit was brought to enforce payment, or when judgment was entered on the verdict, or when final judgment was rendered by the Supreme Court, or when as a result of all these things the sheriff sold the property and the plaintiff was dispossessed. While all these questions are of importance in determining the plaintiff's right in this proceeding, especially in the Master's view of the legal aspect of Mr. Binney's act, yet they are not touched upon in the report. The Master merely finds that Mr. Binney's

act was a mistake and not a fraud, and that therefore the plaintiff's bill should be dismissed. . . . . .

We may as well, first, dispose of one proposition contended for by defendants' counsel, and apparently subscribed to by the Master.　It was urged that fraud could not be imputed to Mr. Binney's act unless he was shown to have been guilty of an actual fraudulent intent, and that in the absence of direct proof of *mala fides*, whatever else his act was, it was not actual fraud.　There is, however, such a thing as legal fraud, to which the law, without proof of fraudulent intent, gives the full legal consequences of actual fraud.　We were referred to a dictum of BRAMWELL, L. J., in Weir v. Bell, L. R. 3 Ex. D. 238, in which he repudiates the term " legal fraud," and says that he can conceive of no fraud not actual fraud, and that to his mind the words " legal fraud " have no more meaning than legal heat or legal cold, legal light or legal shade.　It is sufficient in reply to this sweeping criticism of the learned lord justice to say that the term " legal fraud " is used and recognized in every text-book upon equity and every treatise upon fraud that is found in our libraries, and that so far as Pennsylvania and other states are concerned, our reports abound with cases in which acts innocent of moral guilt have been held to be legal fraud, and treated in the same manner as actual fraud.

In Bank v. Forster, 8 Watts 12, it was held that the neglect of the cashier of a bank to officially notify the directors that his discounted notes were due and unpaid, was such a failure of duty, even though he believed the directors knew the fact, as to amount to a fraudulent concealment, and be a bar to the statute of limitations.　In so deciding, Judge ROGERS says : " In justice to the defendant, I must say that we put this case on the ground of felony without the slightest idea that there was on his side any intentional concealment or meditated fraud whatever."

Judge BLACK, in the case of Kaine v. Weigley, 22 Penn. St. 179, says : " It is sometimes said that fraud is to be proved, and is never to be presumed.　This proposition can be admitted only in a qualified and very limited sense.　It is not true that fraud can never be presumed.　Presumptions are of two kinds, legal and natural.　A sale of chattels without delivery or a conveyance of land without consideration is conclusively pre-

sumed to be fraudulent against creditors, not only without proof of any dishonest intent, but in opposition to the most convincing evidence that the motives and objects of the parties were fair. This is an instance of fraud established by mere presumption of law."

In Kisterbock's Appeal, 51 Penn. St. 483, Judge AGNEW says: "The question of constructive fraud has nothing to do with this case. An act innocent in the intention may be so injurious in the consequences that the law declares it to be a fraud and forbids it. Out of the act the law constructs the fraud, though not tainted with actual fraud."

Many cases from our reports might be cited to the same effect, but we will refer only to one other, in which the last cited case of Kisterbock's Appeal was expressly affirmed. Mitchell v. Buffington, 10 W. N. C. 361, was a case in some respects much like the present. It was an action to recover damages for the wrongful satisfaction of a judgment by the defendant, who set up the bar of the statute of limitations, and the court held that his act was a fraud, that until its discovery by the plaintiff tolled the statute. Judge STERRETT, in the opinion of the court, says: "All the presumptions are against his innocence in the transaction and every just inference points to it as an actual fraud. But even if he was not actuated by any improper motive, the act would nevertheless be fraudulent in its result. An act innocent in the intention may be so injurious in its consequences that the law declares it to be a fraud. . . . . . But the mantle of charity, broad as it is, will not cover such a transaction as that disclosed by this record. . . . . . As the case stands upon the evidence, his act was a positive fraud on the rights of his assignees, for which he should be compelled to respond in damages, unless he is successfully shielded by the statute of limitations." The court then hold that, being a fraud, the statute did not begin to run against the plaintiff until he discovered the fraud. It is to be noted that in that case there was no proof of fraudulent motive upon the part of the defendant in entering the satisfaction.

The Master in the present case has cited three decisions in support of his finding that Mr. Binney's act was not a fraud, because there was no proof of a fraudulent intent: Bokee v.

Walker, 14 Penn. St. 139; Graham v. Hollinger, 26 Penn. St. 55; and Dilworth v. Bradner, 85 Penn. St. 238. None of these cases, however, are at all applicable to the present contention, for they were all actions on the case for deceit, the gist of which action is the bad faith of the defendant. Deceit is only one form or species of actual fraud. There can be no deceit without an intent to deceive, and all that was decided in the cases cited by the Master was that in an action for deceit the intent must be proved. This was what Judge GIBSON meant in Bokee v. Walker when he said: "This is an action on the case for deceit, but a constructive deceit is a new thing under the sun. There can be no constructive *dolus malus.*" Of course there cannot. It would be an abuse of language to say there could. That Judge GIBSON, however, decided no more than that the *dolus* must be proved in actions for deceit is apparent from every line of his argument as well as from his citing with approval Lord Hardwicke's division of fraud into four classes, only one of which is actual fraud.

The cases we have referred to above are sufficient to undoubtedly show that there is such a thing, in this state at least as legal fraud, and that certain acts are, independent of whether the motives of the party be immoral or innocent, regarded as and given all the effect of actual fraud. The text-book authorities equally support this view: Kerr on F. and M., 54, 79, 81, and Bigelow on Fraud, 68.

None of the causes we have cited, however, were on the equity side of the court. The present proceeding is, and in equity the rule with reference to what constitutes fraud is still broader than at law. It is a doctrine of equity not to define fraud or announce any inflexible criterion for determining it, in order that the courts may not be shackled by any unbending rule upon the subject, but may be free to administer relief according to the facts of each particular case. "The court very wisely," says Lord HARDWICKE, Lawley v. Hooper, 3 Atk. 278, "hath never laid down any general rule beyond which it will not go, lest some other means for avoiding the equity of the court should be found out. In Story's Equity, section 1521, it is said: "Courts of equity not only act in obedience and in analogy to the statute of limitations in proper cases,

but they also interfere in many cases to prevent the bar of the statute where it would be inequitable or unjust."

In the recent case of Marsden's Appeal, 102 Penn. St. 199, Judge GREEN says: "This is not a common-law action, but a proceeding in equity. While equity will follow the law in administering statutes of repose, it will also take care that such statutes are not used as instruments in the perpetration of frauds. On the contrary, it will prevent such results by refusing to apply the bar of the statute where justice requires it. . . . . . However it may be at law, it is very certain that equity is not bound to permit the statute of limitations to be used as a shield or protection to fraud, and is at liberty to deny its application in order to prevent manifest injustice."

In Kirby v. Ingersoll, 1 Harring. Ch. 172, it is said: "By the term fraud is meant the legal intent and effect of the act complained of. An illegal act prejudicial to the rights of others is a fraud upon such rights, although the parties may deny all intention of committing a fraud."

In his work on Fraud and Mistake, 54, Kerr lays down the following doctrine: "It is not necessary in order to constitute a fraud that a man who makes a false representation should know it to be false."

The reason and principle upon which courts of equity move in such cases is well stated by Bigelow in his excellent work on Frauds, 68: "Courts of equity do not affect to consider fraud in the light of a crime; it is not their province to punish, nor have they any censorial authority. They interfere in cases of fraud not in a criminal but in a civil point of view."

With these authorities before us how must this court, sitting in equity, regard Mr. Binney's act in the present case? There can be no dispute upon the evidence as to what he did. He wrongfully and illegally wrote upon the margin of a public record satisfaction of a mortgage which he did not own or represent, in which he had no interest, as to which he had no rights to protect, and no duties to perform. So far as the evidence goes, his act was voluntary and gratuitous, as well as unlawful. He knew he had no right to satisfy the mortgage; he must have known; it was his duty to know; he had the means of knowing. He was a man of more than ordinary intelligence. Had he desired to do so, it was within his power

by the exercise of the commonest intelligence to have ascertained that he was committing a wrong. The page upon which he wrote, had he read but a few lines of it, was notice and warning to him that he was doing that which he had no right to do. Why did he not exercise common intelligence? Why did he not read the open page before him? Is a court of equity obliged to ask these questions, or shall it assume that he did what it was his duty to do, and acted in spite of knowledge? Or the other alternative—that, having the means of knowledge in himself and before his face at the time he acted, he closed his eyes and sealed his mind to the means of knowing, and did the wrong in reckless ignorance? Either inference is equally fatal to the innocence of Mr. Binney's act. One who closes his eyes and will not know is quite as culpable as one who, knowing, acts in defiance of his knowledge.

Is the court, however, bound to inquire at all as to the motives of Mr. Binney farther than his own acts? It finds that he voluntarily did an unlawful and wrongful act, which he knew he had no right to do, and in the doing of which he was in the discharge of no other lawful and proper duty. His duty with reference to the mortgage he assumed to satisfy was only that incumbent upon every other person in the world except the owner—the duty to let it alone and not tamper with it. Is not such an act as his, under this evidence, both in fact and law a fraud? Is it necessary before a court of equity can pronounce such an act a fraud that it shall know the conscience and motives of the man at the time he did it? Must the innocent party injured by that act show more than merely the act—all that by reason of its secrecy he can show, and all that has been shown by either side in this case—or must he be asked to do the impossible thing of laying open the mind and conscience of the wrong-doer?

And what has been the effect of Mr. Binney's conduct, for that must to a great extent influence the decision of a court of equity. By reason of Mr. Binney's wrongful entry of satisfaction, Morris Brown, this plaintiff, was deceived into believing that he was purchasing an unincumbered property, and on the strength of that reasonable belief parted with his money. Subsequently Mr. Binney's unlawful act was discovered and the plaintiff was evicted from his home, his title was

destroyed, and his property was entirely lost to him. We have thus before us a voluntary, unlawful and wrongful act on the one hand, and on the other an innocent plaintiff deceived and seriously injured by that act. Surely if there ever was a case in which a court of equity, to prevent a manifest injustice, and to relieve against the injurious consequences of an illegal and wrongful act, should pronounce that act a fraud, this is the case. There is nothing in the evidence to give any other color to it than that of fraud. All that has been argued to show that Mr. Binney's act was an innocent mistake is merely assumption, and is based upon the well-known character of that gentleman for probity. But, as we have before said, that assumption is not a fact of which the court in this proceeding can take judicial notice. We do not by this judgment impeach his general rectitude. We only decide that when he wrongfully and unlawfully entered satisfaction of the mortgage in this case, he did an act which was a fraud upon any subsequent purchaser, who was deceived thereby into parting with his money. His act in so doing was a false and continuing representation of ownership as to any one who might be thereafter misled thereby. It was therefore a fraud, and the statute of limitations would not operate to protect it until its discovery by the party alleging it as the foundation of his right of action, and the Master erred in not so finding.

As we have said, the court, before the lamented death of Judge YERKES, had reached a decision favorable to the plaintiff's right of recovery upon all the questions raised by the exceptions filed except the one considered in this opinion. It was for this reason that the argument before the court, as at present composed, was confined to the single question we have discussed. In deciding, therefore, that the Master erred in finding that Mr. Binney's act was not a fraud, and in dismissing the plaintiff's bill, we wish the judgment of the court to be understood as also carrying with it a decision upon all the exceptions filed (without formally reciting them) in favor of the plaintiff's right of recovery against the defendants under the evidence reported. The proceedings are therefore referred back to the Master for the purpose of stating an account in accordance with this opinion.—

Errors Assigned.

The Master thereupon stated an account in accordance with the foregoing opinion and decree, which being reported and exceptions thereto heard, the court made a final decree: " That the plaintiff is entitled to compensation from the estate of Horace Binney, Jr., deceased, for the loss that he has suffered by reason of the wrongful entry of satisfaction by the said Horace Binney, Jr., on the margin of the record of the mortgage in the first paragraph of plaintiff's bill mentioned, to the extent of $5,449.42, and that the plaintiff do recover from the estate of Horace Binney, Jr., deceased, the sum of $5,449.42, and that the plaintiff do recover from the estate of Horace Binney, Jr., deceased, the costs of this suit."

From this decree William J. Binney took this appeal, assigning as error:—

1. The court below erred in ignoring the fact that the plaintiff's loss was due to the acts of other parties than Horace Binney, Jr.

2. In holding that the evidence conclusively established, and that the Master found that Mrs. School knew nothing of the School and Faurest mortgage.

3. In holding that the testimony failed to show the custom of the recorder's office, or that the entry of satisfaction was made in accordance therewith, and in holding that such a custom, even if proved, could not relieve a person following it from liability for error in the entry.

4. In holding that Horace Binney, Jr., did not sign the entry of satisfaction by mistake, but *knew* that he had no right to do so, there being nothing in the evidence to give his act any other color than that of fraud.

5. In assuming that the Master founded his conclusion, in dismissing the bill, upon the application of the statute of limitations.

6. In holding that in Pennsylvania a court of equity requires less proof of intent in establishing non-contractual actual fraud than is necessary at common law.

7. In holding that legal fraud is something " to which the law, without proof of fraudulent intent, gives the full legal consequences of actual fraud."

8. In holding that the act of Horace Binney, Jr., was a false and continuing representation of ownership, by which the

plaintiff was misled, and that, it being thereby 'a fraud, the statute of limitations would not run till its discovery.

9. In holding that the plaintiff's claim, even if valid, could be increased by interest accruing after his discovery of the mortgage on July 12, 1881.

10. In not so moulding its decree as to protect the defendants against Mr. Carver's claim for the loss of his mortgage.

11. In entering the decree of July 3, 1886.

12 In not dismissing the plaintiff's bill.

*Mr. William Henry Rawle* and *Mr. Charles Chauncey Binney*, for the appellant:

1. 2. It was error in the court below to ignore the fact that the plaintiff's loss was due to the acts of other parties, his vendor, Mrs. School, her agent, Mr. McCaffrey, and plaintiff's own agent and conveyancer, Mr. Williamson. The negligence and frauds of others directly deceived the plaintiff, and, being independent of Mr. Binney's act, should exonerate him from liability: McFerran v. Taylor, 3 Cranch 270, 281; Richardson v. Sylvester, L. R. 9 Q. B. 34; Thompson v. Harrison, 1 Cox 344; Notes to Ashby v. White, 1 Sm. L. C. 319*, ed. of 1885; Com. v. Harmer, 6 Phila. 90; Owen v. Savings Fund, 97 Penn. St. 47.

3. The testimony as to the usual course of doing business in the recorder's office, and as to what was done in this particular case, has been misunderstood. It was not intended to show a custom that would support a prescriptive right in any person, but simply to satisfy the court as to what was done, why it was done, and that in so doing Mr. Binney came up to the standard of the average man, which was all that the law required of him: Hetherington v. Kemp, 4 Camp. 194; Lancaster v. Smith, 67 Penn. St. 427; Brown v. Henry, 106 Idem 262; Glading v. Frick, 88 Idem 460; Adsit v. Brady, 4 Hill 630 (40 Amer. D. 305); Hover v. Barkhoof, 44 N. Y. 113; Mechanics B. A. v. Whitacre, 92 Ill. 547; Shear. & R. Neg. §§ 6, 7; Whart. Neg. § 65 *et seq.;* McMasters v. Penn. R. Co., 69 Penn. St. 374; Carter v. Coal Co., 77 Idem 286; Adams v. Ins. Co., 95 Idem 348; VanHorn v. Gilbough, 10 W. N. 347; Whart. Ev. § 57.

4. The court below has said that Mr. Binney knew that he

had no right to sign his name where he did, there being nothing in the evidence to give his act any other color than that of fraud. It is enough to say as to the first assertion, " There is no conclusive rule of law that because a party has the means of knowledge he has the knowledge itself: " TINDAL, C. J., in Bell v. Gardiner, 4 M. & G. 11, 24. The argument that Mr. Binney's act was a mistake, not a fraud and not even negligence, is based on facts *in evidence*, and the inevitable inferences from them. The court cannot say his mistake was a fraud: Mercier v. Lewis, 39 Cal. 532; Leighton v. Grant, 20 Minn. 345; Steele v. Kinkle, 3 Ala. 352; Williams v. Sturdevant, 27 Idem 598; Ayres v. Scribner, 17 Wend. 407; Bank v. Nott, 17 Wend. 554.

5. The court erred in assuming that the Master founded his conclusions in dismissing the bill upon the application of the statute of limitations.

The fact that the Master, as the court admits, did not even refer to the statute of limitations in his report, still less give it as his reason for dismissing the bill, is a sufficient answer to this strange assumption. The defendants contended that he erred in not giving them the benefit of the statute as an additional defence, and excepted on that ground, but he declined to modify his report. He held that, as no case of fraud had been made out, the defence of the statute was simply superfluous. Yet the court below rested its judgment on the ground that the statute did not apply. Should this court hold this to be error, the case may stop here, and the court be relieved from further argument.

6. It is error to hold that a court of equity in Pennsylvania requires less proof of intent in establishing non-contractual actual fraud than is necessary at common law: Chesterfield v. Jansen, 2 Ves. Sr. 125; 1 L. C. in Eq. 4th ed. 541*; Pasley v. Freeman, 3 T. R. 51; Bigelow Fraud, 60; Russell v. Clark, 7 Cranch 69, 89; Gwinther v. Gerding, 3 Head (Tenn.) 201; Martyn v. Westbrook, 7 L. T., N. S., 449; Peek v. Gurney, L. R. Eng. & Irish App. 377; *In re* Vanderveer, 5 C. E. Green 463; Bryan v. Hitchcock, 43 Mo. 527; Allison v. Ward, 5 West. R. 730; Story Eq. J. § 190; Marksbury v. Taylor, 10 Bush (Ky.) 519; Marsden's App., 102 Penn. St. 199.

7. It was error to hold, as did the court below, that "There is, however, such a thing as legal fraud, to which the law, without proof of fraudulent intent, gives the full legal consequences of actual fraud": Pasley v. Freeman, 3 T. R. 51, 59; and cases in the line of Burrowes v. Lock, 10 Ves. 470, are modified by a late return to sounder views: Brownlie v. Campbell, L. R. 5 App. Cas. 925, 952; Smallcomb's Case, L. R. 3 Eq. 769; Weir v. Bell, L. R. 3 Ex. D. 238; Joliffe v. Baker, L. R. 11 Q. B. Div. 255; Hovenden v. Lord Annesley, 2 Sch. & Lef. 607, 634; Holl. El. Jur. 176; Shear. & R. Neg. § 3; Kerr F. & M. ed. 1872, 406–408; Evans v. Bicknell, 6 Ves. 174, 192; Goodman v. Harvey, 4 A. & E. 870; Uther v. Rich, 10 Idem 784, 791; Jones v. Smith, 1 Hare 43, 71; West v. Reid, 2 Idem 249; Story Eq. J. § 258; Stewart v. G. W. R., 11 Jur. N. S. 627; Flower v. Farwell, 18 Brad. (Ill.) 254; Pollock Con. 4th ed. 479. With regard to false representation, which is the species of fraud set up here, this court has never drifted from the true principle that moral fraud, i. e., intent to deceive, must be proved, not assumed: Bokee v. Walker, 14 Penn. St. 139; Erie City Iron Works v. Barber, 106 Idem 125. And see Cox v. Highley, 100 Idem 249; Russell v. Clark, 7 Cranch 69, 96; Young v. Covell, 8 Johns. 23. (5 Amer. D. 316); Lord v. Goddard, 13 How. 198; Thorwegan v. King, 111 U. S. 553; Swazey v. Herr, 11 Penn. St. 278, 280; Rheem v. Wheel Co., 33 Idem 358; Graham v. Hollinger, 46 Idem 55; Dilworth v. Bradner, 85 Idem 238; Duff v. Williams, 85 Idem 490. Bank v. Forster, 8 W. 12; Kaine v. Weigley, 22 Penn. St. 179; Kisterbock's App., 51 Idem 483, and Mitchell v. Buffington, 10 W. N. 361, are distinguished.

8. What did the entry of satisfaction, as signed by Mr. Binney, represent?

The court below has uniformly treated it as a representation by Mr. Binney that he had received payment of the mortgage on No. 1117 Lombard street, though to reach this conclusion it has disregarded the effect of the references to the assignments and the recorder's attestation, both important parts of the entry.

Joseph Swift was the mortgagee of record, and the only person *prima facie* entitled to sign the satisfaction. The evi-

dence of Mr. Binney's right to do this, instead of Mr. Swift, lay in the assignments, which were referred to in the entry. What Mr. Binney signed, then, was a statement that he had received payment of a mortgage which he held under those assignments. This statement disclosed the grounds of his belief in his right to sign it, so that any one could easily learn all that he himself knew about it. This was the opposite of fraud. Although there was then no law requiring in terms that assignments be noted on the margin of the record, these references to them were none the less essential parts of a proper entry of satisfaction at that time. Whatever puts a party on inquiry, amounts in judgment of law to notice: Lodge v. Simonton, 2 P. & W. 439, 445; Silver v. Frazier, 3 Allen 382.

And the statute of limitations is applied with the same effect in a court of equity as in a court of law: Hamilton v. Hamilton, 18 Penn. St. 21; Irwin v. Cooper, 92 Idem 298; York's App., 17 W. N. 17. And to delay the running of the statute three things are requisite: *First*, fraud must be clearly proved: Bree v. Holbeck, 2 Doug. 654; Bishop v. Little, 3 Greenl. 405; Stearns v. Page, 7 How. 819, 828. *Second*, the fraud must be actual: Cole v. McGlathry, 9 Greenl. 131; Rouse v. Southard, 39 Me. 404; Buckner v. Calcote, 28 Miss. 432; Wilson v. Ivy, 32 Idem 233; Dawes v. Bagnall, 33 Week. R. 690; Gibbs v. Guild, L. R. 9 Q. B. Div. 59; Owen v. Savings Fund, 97 Penn. St. 47; and it follows that in cases of constructive fraud, where acts are forbidden because likely to afford opportunities for fraud, the statute runs from the date of the constructively fraudulent act: Ang. Lim. § 187; Big. Fr. 446; Bump's Kerr Fr. 309 n.; Farnam v. Brooks, 9 Pick. 212; Wilmerding v. Russ, 33 Conn. 67; Obert v. Obert, 1 Beas. 423; Beckford v. Wade, 17 Ves. 87; Kane v. Bloodgood, 7 Johns. Ch. 90, 123 (11 Amer. D. 417); Cooper v. Cooper, 61 Miss. 676; Kennedy v. Baker, 59 Tex. 150; McClane v. Shepherd, 6 C. E. Green 76; Boone v. Chiles, 10 Pet. 177, 223. Our cases all support this doctrine: Musselman v. Eshleman, 10 Penn. St. 394; Morrell v. Trotter, 12 W. N. 143; Hollinghead v. Whitaker, 40 Leg. Int. 36; Waterman v. Brown, 31 Penn. St. 161; Downey v. Garard, 24 Idem 52; Fleming v. Culburt, 46 Idem 498; Campbell v.

Boggs, 48 Idem, 524; Ashhurst's App., 60 Idem 290, 315. *Third*, it must have been impossible for the plaintiff by the exercise of reasonable diligence to have discovered the fraud sooner: Ang. Lim. § 183; Bump's Kerr Fr. 309–311; Big. Fr. 442; Gordon v. Parmelee, 2 Allen 212; Mooney v. Miller, 102 Mass. 217; Leavenworth County v. Railroad Co. 18 Fed. Rep. 209; Taylor v. Railway Co., 4 Woods 575; Maxwell v. Kennedy, 8 How. 210.

9. The decree includes $1,245.79, interest allowed to date of decree. Apart from a contract, express or implied, interest as such can be allowed in damages only in cases of (1) a default in payment of a debt due; (2) use or possession derived from possession of plaintiff's personal property; (3) conversion or destruction of the plaintiff's personal property: Notes to Selleck v. French, 1 Am. L. C. 503*.

10. The defendants had the right to be protected by the plaintiff from any loss to them from his failure to discharge his debt for purchase money to Mr. Carver: Bisp. Eq. § 7; Story Eq. J. § 27; 2 Dan. Ch. Pl. & Pr. 990*; Adams Eq. 389*; Mar. Ins. Co. v. Hodgson, 7 Cranch 332; Veazie v. Williams, 8 How. 134.

*Mr. J. Cooke Longstreth* and *Mr. Henry S. Cattell*, for the appellee:

1. Appellant's testator wrongfully and illegally wrote upon the margin of a public record the satisfaction of a mortgage which he did not own or represent, in which he had no interest, and as to which he had no rights to protect and no duties to perform. It was not a mere innocent mistake. Mr. Binney had the means of knowing, and it was his duty to know, whether he owned the mortgage he was satisfying; and when he recklessly entered satisfaction on the record of a mortgage he did not own, he committed a fraud: Chesterfield v. Jansen, 2 Ves. 156; Kerr Fr. 54, 406; Kirby v. Ingersoll, 1 Harrington Ch. 172.

"An act innocent in the intention may be so injurious in the consequences that the law declares it to be a fraud, and forbids it. Out of the act, the law constructs the fraud though not tainted with actual fraud:" Kisterbock's App., 51 Penn. St. Rep. 485; Mitchell v. Buffington, 10 W. N.

361; Bank v. Forster, 8 W. 12; Kaine v. Weigley, 22 Penn. St. 179.

The assumption in the bill of a concurrent remedy against the recorder on his contract to furnish a correct search is, in view of the decisions of this court, unsound. For Lancaster v. Smith, 67 Penn. St. 427, and Brown v. Henry, 106 Idem 262, establish the principle that the responsible actor in the entry of satisfaction on the record of a mortgage is the alleged mortgagee. The party making the entry, therefore, is alone responsible for what it imports, and in this case the loss was the natural and proximate result of his act.

The entry of satisfaction was an express representation by Mr. Binney that he owned the mortgage which he undertook to satisfy on the margin of the record, the natural result of which was to deceive any one who might thereafter take title, and liability follows: Big. Fr. 68; N. Y. & N. H. R. Co. v. Schuyler, 34 N. Y. 30; Phelps v. Waite, 30 Idem 78; Suydam v. Moore, 8 Barb. 358; Bruff v. Mali, 36 N. Y. 200.

2. As to the effect of the statute of limitations, the appellee's position is that, where a man represents what is false, that representation is, as to him who subsequently relies on it, a continuing false representation, and in this case was of such a nature as to produce the injury that actually occurred.

As Mr. Binney's act in entering satisfaction in 1867 did not then affect the appellee, neither did its continuing quality affect him until payment of the mortgage was claimed; and it may well be that he had no complete right of action until judgment obtained on the mortgage: Mitchell v. Darby Co., Amer. L. R., July, 1885, 452; Watson v. Freeman, Hob. 267; Bank of Hartford Co. v. Waterman, 26 Conn. 324. In this case there was no contractual relation as in Owens v. Savings Fund.

In any event, the statute did not commence to run until the discovery by the plaintiff of the wrong done by Mr. Binney: Mitchell v. Buffington, 10 W. N. 361; Ferris v. Henderson, 12 Penn. St. 49; Kuhn's App., 87 Idem 100; Marsden's App., 102 Idem 199.

To recapitulate, appellee insists on the following propositions:

1. That a wrongful act with a continuing quality afterwards

resulting in an injury to one who had no contractual relations with the wrong-doer, and no privity with the act, is a fraud.

2. That such fraud is not a constructive fraud.

3. That intent, ethically or morally considered, is an immaterial element in the consideration of the question of the injured party's remedy against the wrong-doer.

4. That no cause of action arises until the party wronged discovers the fraud, and that such cause of action is probably not complete until the damage is actually suffered.

OPINION, MR. JUSTICE GORDON:

We agree with the learned master that there is nothing in this case to support the plaintiff's bill. There is neither evidence of actual fraud, nor are the circumstances attending the transaction such as to involve legal fraud. Horace Binney, Jr., together with the recorder, made a mistake for which he might have been held liable had suit been brought against him within the statutory period; but he was chargeable with nothing but a mistake. Of this the face of the docket itself is indubitable evidence for it indicates precisely what mortgage he intended to satisfy, and from what there appears, no careful person ought to have been misled by the entry thereon made by way of satisfaction. The very first question that an inspection of the record gives rise to is: how comes it that Horace Binney, as administrator *de bonis non* of Wm. J. Bell, undertakes to satisfy a mortgage of which Joseph Swift is the mortgagee? The answer is found on the same margin of the book on which the satisfaction is written: "Asst. T. H. 20, 355. A. D. B. 12, 471." That is to say: turn to the mortgage books as indicated, and you will there find the assignments which give Horace Binney, Jr., the power to satisfy this mortgage. But turning to these books, as, if we are interested, we ought to do, we at once discover that a mistake has been made; that the mortgage intended, the one Binney had power to satisfy, is to be found on page 544 of the mortgage book, and not that on page 543, and that, in fact, he could not satisfy the latter because he had no power so to do: Brown v. Henry, 106 Penn. St. 262. The mistake being thus apparent, made apparent by the transaction itself, there is no room to

infer fraud either actual or constructive; hence the plaintiff's only remedy was an action on the case, a remedy long since barred by the statute of limitations: Owen v. The Savings Fund, 97 Penn. St. 47.

The decree of the court below is now reversed and set aside, and the bill is dismissed at the costs of the appellee.